DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@workandwage.com
Ryan S. Dustin, Esq. (ISB No. 8683)
rdustin@workandwage.com
CASPERSON ULRICH DUSTIN PLLC
356 Sunnyside Rd., Suite B
Idaho Falls, ID 83402
Telephone: (208) 524-0566
Facsimile: (208) 745-2523

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TOMMY "SHANE" BODEN,<br><br>Plaintiff,<br><br>v.<br><br>CROP PRODUCTION SERVICES, INC.,<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Filing Fee: $400.00 |

Plaintiff, Tommy "Shane" Boden, by and through his counsel of record Casperson Ulrich Dustin PLLC, as a cause of action against Defendant, Crop Production Services, Inc., alleges and complains as follows:

**JURISDICTION AND VENUE**

1. This is an action brought under the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 12101, *et seq.*; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; and the common law of the State of Idaho

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367; 42 U.S.C. § 12117; and 29 U.S.C. § 626.

3. Venue in this action properly lies in the United States District Court for the District of Idaho, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because the claims arose in this judicial district; and venue also properly lies in this district pursuant to 42 U.S.C. § 12117 because the unlawful employment practices were committed in this judicial district.

## PARTIES

4. Plaintiff Tommy "Shane" Boden ("Boden" or "Plaintiff") is a citizen and a resident of the United States of America, who resides in Ammon, Idaho.

5. Defendant Crop Production Services, Inc. ("Defendant") is a Delaware corporation which conducts business in Idaho, and has an office in Idaho Falls, Idaho.

6. At all times material to this Complaint, Defendant regularly employed fifteen or more persons, and was engaged in an industry affecting commerce, bringing Defendant within the ambit of 42 U.S.C. § 12111. Defendant also regularly employed twenty of more persons, and was engaged in an industry affecting commerce, bringing Defendant within the ambit of 29 U.S.C. § 630.

## FACTS COMMON TO ALL COUNTS

7. Boden realleges and incorporates by reference paragraphs 1 through 6 above, as though fully incorporated herein.

8. Boden began working for Defendant in or around March 2014, as an agricultural salesperson. Boden was recruited by Michael Larkin ("Larkin") and hired by Larkin and Jeremy Jensen ("Jensen"). However, Larkin was Boden's direct supervisor. Larkin left the company approximately nine months after Boden started.

9. After Larkin left the company, Jensen assigned Boden to report directly to Greg Eames ("Eames") who was the manager at the Roberts, Idaho store. Eames was known to be very

difficult to work for. Jensen assigned Boden to work under Eames and moved the sales person who was struggling to work under Eames to a different location.

10. At all times he was employed by Defendant, Boden performed his job duties in a satisfactory manner.

11. On or about April 6, 2016, Boden was injured at work when he lost his balance stepping off a piece of equipment and fell back onto some discarded metal framework salvage.

12. After Boden was able to get up from the fall, he realized he had torn his shirt and was bleeding from several scrapes and cuts.  He immediately went to the office and reported the injury to his supervisor Eames.

13. Eames asked if Boden was okay and he said, "I think so." However, Boden believed that Eames would make the proper reports of workplace injury as he was required to do. However, Boden later learned that Eames did not document or report Boden's injury.

14. Although the scrapes and cuts from Boden's injury eventually healed, he began having pain in his back and right leg.  Consequently, on or about May 5, 2016, Boden spoke with Eames regarding seeing a doctor for his injury.

15. Eames informed Boden that he would have to use his own medical insurance because Eames could not do anything to submit Boden's injury as a worker's compensation claim.  Eames also informed Boden that he did not want to try to submit the injury to worker's compensation because the paperwork was "two feet high."

16. After Boden explained to Eames that he would not use his own insurance for treatment for the injury, Eames said it was out of his hands, and that Boden would have to call Scott Clelland ("Clelland") who was the Environmental Health, Safety and Security representative for Defendant's Snake River Division.

17. Boden contacted Clelland and explained his April 6, 2016, injury and his ongoing issues with pain. Clelland informed Boden that submitting a workers compensation claim was relatively easy, but that Clelland could not do so because Eames never filled out an injury report.

18. Clelland then instructed Boden on how to complete an accident form online to submit. It took Boden approximately 20 minutes to fill out the form.

19. After Boden submitted the accident report and filed his claim, he saw a doctor who referred him to a spine specialist.

20. Boden received cortisone injections, and continued to have ongoing problems and medical treatment associated with the April 6, 2016, injury.

21. On or about May 12, 2016, several days after Boden spoke with Eames about his need for medical treatment, Defendant's Snake River Division Manager Jensen called Boden and asked Boden how he had injured himself.

22. After Boden explained how he was injured, Jensen repeatedly told him that he "knew better" when Boden told him he believed he was required to report the injury. Jensen again said that Boden "knew better."

23. Jensen then started interrogating Boden about his injury, asking if he was sure that he had not injured himself earlier and was now turning it in to get coverage from the company. Boden was shocked by Jensen's conduct, given that Boden had simply followed company protocol, and informed Jensen as much.

24. Boden also informed Jensen that he really did injure himself at work and would gladly allow him to review Boden's medical records to verify his injuries.

25. Subsequent to the phone call from Jensen, Boden's work environment changed significantly. Eames would no longer speak with Boden unless completely necessary, and Jensen would not return Boden's calls for several weeks.

26. Eames is well known for his offensive treatment of employees, including Boden.

27. Eames apparently also told another custom applicator that "every day I try to fire that son-of-a-b**ch," referring to Boden.

28. In or around May or June 2016, Defendant hired a young man to work as a salesman in the Idaho Falls North area ("New Salesman"). New Salesman had recently graduated from college and had little experience.

29. Boden thought it was odd that they would hire another sales person for the same area covered by Boden and was still being developed.

30. Shortly after New Salesman was hired, Boden received a call from the employee of one of Boden's established farm accounts. The employee told Boden that New Salesman had visited his farm in a remote area of Birch Creek. New Salesman had tried to solicit business but the employee of the established farm account informed New Salesman that they already did business with Defendant through Boden.

31. New Salesman stated to the employee that he did not know why Defendant had sent him all the way to the remote farm or why Defendant had him visit other client accounts already purchased through Boden. New Salesman also stated to the employee that he did not want Boden to know New Salesman had gone to the farm.

32. Eames and Jensen also began increasing their criticisms of Boden and his performance, based upon untrue allegations.

33. On August 16, 2016, Eames sent Boden an email, on which Jensen was copied, wherein Eames reprimanded Boden for requesting to write off the interest on a particular account. However, Boden had informed Eames at least two months prior that the account in question was undergoing changes to their accounts payable and that there might be a hiccup or two in processing payments.

34. Boden explained the situation to Jensen in an email and asked to discuss Eames' behavior with Jensen.

35. Between August and September 2016, Boden began getting pressure from Jensen regarding his sales performance and gross margins. However, Boden had reached the performance and gross margin goals he had been given, and, based upon Boden's knowledge of his own sales, he was on track to not only meet, but exceed, the given 2016 performance and gross margin goals he had been given.

36. Despite this, Jensen refused to share Boden's numbers with him, but told Boden his gross margins were not high enough.

37. In October 2016, Defendant terminated Boden's employment. Jensen told Boden that Boden was being fired because his numbers were not meeting Defendant's requirements. However, Boden still had three more months to meet his goals, and New Salesman was interfering as directed by Defendant with Boden's assigned area and accounts.

38. Jensen told Boden that an additional three months would not be enough to meet his goals. When Boden offered to reduce his wages to give himself another year to build sales, Jensen refused.

39. On or about November 9, 2016, Boden was helping one of his former customers from when he was employed by Defendant look at some weed issues he was having along one of his

canal banks.  Unprompted, the customer called Jensen on his cell phone and put the call on speaker phone.  When the customer asked Jensen why he fired Boden, Jensen stated it was really tough out there, but that he had hired someone younger who could offer more services to the customer.  Jensen reiterated this statement at least three times.

40. The customer responded to Jensen stating Boden was the best fieldman he had ever had and asked how the New Salesman, fresh out of college could know all of the chemicals and fertilizer that the customer needed.  The customer stated, "I would rather have someone that knows something than have someone young."

41. Jensen conceded that the New Salesman was new, but that he was raised on a farm.

42. On or about April 4, 2017, Boden dually filed a Charge of Discrimination with the Idaho Human Rights Commission ("IHRC") and the Equal Employment Opportunity Commission ("EEOC").

43. On or about March 13, 2018, Boden received his Notice of Right to Sue Letter from the IHRC.  On or about March 20, 2018, Boden received his Notice of Right to Sue Letter from the EEOC.  Boden has exhausted his administrative remedies.

## COUNT ONE
## VIOLATION OF THE AMERICANS WITH
## DISABILITIES ACT AMENDMENTS ACT

44. Boden realleges and incorporates by reference paragraphs 1 through 43 above, as though fully incorporated herein.

45. Boden had a disability as defined by the ADAAA, in that he had an actual disability, a record of disability, or was regarded as being disabled by Defendant.

46. Defendant took adverse employment action against Boden when Defendant pretextually reprimanded Boden and when it terminated Boden's employment.

47. Defendant discharged Boden on the basis of his disability.

48. As a direct and proximate result of Defendant's actions and/or failures to act, Boden has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Boden is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available to him.

49. Defendant's conduct was malicious and oppressive, and done with reckless disregard for Boden's federally protected rights, for which Boden is entitled to punitive damages.

## COUNT TWO
## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

50. Boden realleges and incorporates by reference paragraphs 1 through 49 above, as though fully incorporated herein.

51. Defendant terminated Boden's employment.

52. Boden was over 40 years of age at the time of termination.

53. Boden was performing his job satisfactorily.

54. Defendant replaced Boden with someone who was substantially younger and/or treated other individuals who were significantly younger than Boden more favorably than Boden.

55. Defendant terminated Boden's employment because of his age.

56. As a direct and proximate result of Defendant's actions and/or failures to act, Boden has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Boden is thereby entitled to damages in such amount to be proven at trial.

57. Defendant's conduct was willful, and done with a reckless disregard for Boden's federally protected rights, for which Boden is entitled to liquidated damages pursuant to 29 U.S.C. § 626(b).

## COUNT THREE
## WRONGFUL TERMINATION IN CONTRAVENTION
## OF PUBLIC POLICY

58. Boden realleges and incorporates by reference paragraphs 1 through 57 above, as though fully incorporated herein.

59. Boden engaged in protected activity when he reported work-related injuries and/or a disability, sought medical treatment for a work-related injury, and pursued a worker's compensation claim associated with his work-related injury.

60. Defendant retaliated against Boden and terminated Boden as result of Boden reporting his work-related injuries, seeking medical treatment for his work-related injury, and pursing a worker's compensation claim associated with his work-related injury.

61. Defendant violated the public policy of the State of Idaho by its retaliatory actions.

62. As a direct and proximate result of Defendant's actions and/or failures to act, Boden has suffered and will continue to suffer a loss of earnings and other employment based job opportunities. Boden is thereby entitled to damages, such amount to be proven at trial, as well as other equitable remedies available to him.

## ATTORNEY'S FEES

63. As a further direct and proximate result of Defendant's actions and/or failures to act, Boden has been compelled to retain the services of counsel, and has thereby incurred and will continue to incur costs and attorney's fees which should be required to be paid by the Defendants pursuant to Idaho Code §§ 12-120, and 12-121; 42 U.S.C. § 12205; and 29 U.S.C. § 626(b).

## **DEMAND FOR JURY TRIAL**

Boden demands trial by jury as to all issues triable to a jury in this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Boden seeks judgment against the Defendant as follows:

1. For compensatory and general damages as well as statutorily available damages in an amount as shall be proven at trial, and any available equitable remedies;

2. For punitive damages;

3. For attorney's fees pursuant to statute and costs of suit; and

4. For such other and further relief as the Court deems just and proper.

Dated this 11th day of June, 2018.

                                                  /s/
                                         DeAnne Casperson
                                         CASPERSON ULRICH DUSTIN PLLC

C:\Users\Dana\Casperson Ulrich Dustin PLLC\Casperson Ulrich Dustin PLLC Team Site - Documents\DC\19446 Boden\Pleadings\Complaint.wpd:dg

10 - COMPLAINT AND DEMAND FOR JURY TRIAL