## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

**TOMMY "SHANE" BODEN**                                        **PLAINTIFF**

**VS.**                            **4:18-CV-00266-JM**

**NUTRIEN AG SOLUTIONS, INC.,** formerly
**known as CROP PRODUCTION SERVICES, INC.**              **DEFENDANT**

### ORDER

Pending are Defendant's Motion for Summary Judgment (Doc. No. 31) and Motion to Strike (Doc. No. 47). Plaintiff responded and Defendant replied.[1] For the reasons stated below, Defendant's Motion to Strike is GRANTED and the Motion for Summary Judgment is GRANTED in PART and DENIED in PART.

## I.   BACKGROUND

In March 2014, Defendant hired Plaintiff, who was 58 years old, as an agricultural salesperson at its Idaho Falls branch.[2] Later in 2014, Defendant's Idaho Falls branch stopped selling agricultural products, so Plaintiff was transferred to its Roberts, Idaho branch.[3]

On April 6, 2016, Plaintiff was injured at work,[4] and reported the injury to his supervisor, Greg Eames. On May 6, 2016, Plaintiff talked to Eames about seeing a doctor for his injury. Plaintiff also contacted Defendant's Safety Manager and was told how to make a worker's compensation claim. He filed the claim on May 7, 2016. On May 12, 2016, another supervisor, Jeremy Jensen, asked Plaintiff about the injury, and told him that he "knew better."[5] The parties disagree as to whether Jensen was referring to the accident or the filing of the claim.

---

[1]Doc. Nos. 45, 53, 54.

[2]Doc. No. 31-2, p.3.

[3]*Id.* at 4.

[4]*Id.* at 6.

1

Sometime before May 5, 2016, Jensen told Plaintiff that he must reach a $250,000 yearly sales goal to keep his job.[6] In October 2016, Defendant terminated Plaintiff's employment.[7] Jensen told Plaintiff that he was being fired because he failed to meet his sales goals.[8]

On April 4, 2017, Plaintiff filed a Charge of Discrimination with the Idaho Human Rights Commission ("IHRC") and the Equal Employment Opportunity Commission ("EEOC"). In March 2018, Plaintiff received Notice of Right to Sue Letters from both the IHRC and the EEOC. Plaintiff file this case alleging that he was fired based on his disability, age, and in retaliation for filing a worker's compensation claim.

## II.    APPLICABLE LAW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9] The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[10] In considering a motion for summary judgment, the Court must "view[ ] the facts in the non-moving party's favor."[11] To defeat a motion for summary judgment, the respondent need only present evidence upon which "a

---

[5]*Id.* at 8.

[6]*Id.*

[7]*Id.* at 6.

[8]*Id.*

[9]Fed. R. Civ. P. 56(a).

[10]*Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted).

[11]*Id.*

reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor."[12] On the other hand, as the Supreme Court has made clear: "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment is appropriate.[13]

Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[14] The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that preclude summary judgment.[15]

## III.   DISCUSSION

### A.   Motion To Strike

Before considering Plaintiff's claims, the Court must address Defendant's Motion to Strike, given its potential impact on the Motion for Summary Judgment.

Defendant seeks to strike parts of the Statement of Facts, and the declarations by Plaintiff and Isaac Walker.  Defendant argues that Plaintiff's declaration is inconsistent with his deposition testimony, and that he inappropriately used these statements in his disputed statement of facts, in violation of the sham affidavit rule. It also contends that Brown's declaration contains

---

[12]*Id.* (citation omitted).

[13]*Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

[14]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[15]*Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

3

hearsay and should not be considered. Plaintiff asserts that he merely elaborated, explained, and clarified his earlier answers and there is no "clear and unambiguous" discrepancy.

### 1.    Sham Affidavit Rule

The "sham affidavit rule prevents a party who has been examined at length on deposition from raising an issue of fact simply by submitting an affidavit contradicting his own prior testimony."[16] However, "[t]he sham affidavit rule should be applied with caution because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment."[17] In addition, "the non-moving party is not precluded from elaborating upon, explaining, or clarifying prior testimony elicited by opposing counsel on deposition and minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit."[18]

The Court must determine whether the "inconsistency between [Plaintiff's] deposition testimony and his subsequent declaration is clear and unambiguous to justify striking the affidavit."[19] The declaration is a sham if "no juror would believe [Plaintiff]'s weak explanation for his sudden ability to remember"[20]

Plaintiff's declarations address two specific issues in the case: (1) whether Jensen was the sole person who hired him and (2) whether Jensen knew Plaintiff filed a worker's compensation claim before he informed Plaintiff of his $250,000 sales requirements for 2016.

---

[16]*Id.* at 1080 (citations and punctuation omitted).

[17]*Id.* (citation and punctuation omitted).

[18]*Id.* at 1081 (citations omitted).

[19]*Yeager v. Bowlin*, 693 F.3d 1076, 1079 (9th Cir. 2010) (citations omitted).

[20]See *id.*

These specific statements impact elements of Plaintiff's claims. First, they impact whether the "same actor inference" is available to Defendant because the hiring and firing decision was made by the same person. Second, the retaliation claim incorporates a time line that shows Jensen knew about the worker's compensation claim before telling Plaintiff about his sales goals.

Plaintiff's deposition testimony clearly indicates that he contacted Jensen about the job, and Jensen approved his hiring, but left the final details to Michael Larkin because he would be the local manager where Plaintiff would be working.[21] It is undisputed that Jensen was the Division Manager who oversaw the sales staff in all of Defendant's Idaho stores.[22] Plaintiff's declaration attempts to diminish Jensen's participation in the hiring process to a mere introductory role, leaving Larkin as the sole hiring decision-maker, which is a clear contradiction to his previous testimony.[23] Additionally, during the deposition, Plaintiff was unsure how or when the final hiring decision was made,[24] but Plaintiff's declaration claims Larkin made the decision on his own, following a lunch meeting.[25]

Similarly, Plaintiffs' declaration inexplicably changed the date he first notified Defendant of his worker's compensation claim and the date Jansen told him about the new sales goals.[26] Plaintiff testified that Jensen told him he needed to increase his sales in a conversation before May 6, 2016. A series of e-mails, confirmed by Plaintiff during his deposition, dated

---

[21]Doc. No. 45-3, pp. 6- 8.

[22]Doc. No. 31-2, p. 3.

[23]*Id.*

[24]Doc. No. 45-11, p. 3.

[25]Doc. No. 45-11, p. 3.

[26]Doc. No. 45-3, p. 8.

May 5, 2016, makes clear that the meeting with Jensen was sometime before that date.[27] Plaintiff testified his first request for treatment was made the day before his worker's compensation claim was filed on May 7.[28]

However, in his Statement of Disputed Facts, Plaintiff claims that "[o]n May 2 or 3, 2016, [Plaintiff] told Eames he needed medical treatment for his injury, and wanted to see a doctor."[29] Additionally, contrary to earlier testimony, Plaintiff contends that "[s]oon after [he] told Eames he needed medical treatment, Jensen told [him] for the first time [he] needed to pass $250,000 in gross profit."[30] He claims he came to this revelation by consulting a calendar and his medical documents after his deposition.[31] This is a weak basis for changing his testimony, because Plaintiff was provided with dated documents and emails during his deposition.

Accordingly, the Court finds Plaintiff's Declaration and Statement of Disputed Facts improperly contradicts his deposition testimony. Plaintiff's Declaration paragraphs 5, 6, 9, 11, 12, and 13 are stricken, as are portions of the Disputed Statement of Facts (paragraphs 3, 18-21, and 36) that reference these paragraphs.

### 2.    Isaac Walker's Declaration

To support his age-discrimination claim, Plaintiff's Complaint asserts that Defendant hired a younger employee to replace him. During discovery, Plaintiff learned that the person who replaced him was already employed by Defendant. So, Plaintiff provided Isaac Walker's

---

[27]*Id.* at 11.

[28]*Id.* at 21.

[29]Doc. No. 45-11, p. 4.

[30]*Id.* at 5.

[31]*Id.*

declaration to support his discrimination claim.[32] He shifted away from saying Defendant hired Baker to replace him, to arguing that Defendant instructed Baker to move-in on Plaintiff's customers.[33] Walker's declaration is provided to support this new position.[34]

The declaration is hearsay since it is an out-of-court statement offered to prove the truth of the matter asserted, namely, that someone associated with Defendant told Baker to poach Plaintiff's existing customers.[35] Inadmissible hearsay cannot be considered on a motion for summary judgment.[36] At the summary judgment stage, the Court need not decide whether Walker's declaration itself is admissible, but whether the information contained in the declaration is admissible.[37]

Here, Walker's Declaration is a statement about something Baker told him (Walker) that an unidentified employee of Defendant told him (Baker), which is hearsay. Plaintiff argues that the statements are admissible under the "party opponent" exception.[38]

At trial Baker could testify about statements he made to Walker. Similarly, Walker could testify about Baker's statement because Baker could be considered a "party opponent" as an agent of Defendant. However, statements by an unidentified party are not admissible to prove

---

[32] Doc. No. 45-13.

[33] Doc. No. 45, p. 18.

[34] Doc. No. 45-13, p. 2.

[35] *See* Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

[36] *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir.1980).

[37] *Fraser*, 342 F.3d at 1036-37.

[38] Fed. R. Evid. 801(d)(2).

the matter asserted through either Baker or Walker. The unidentified employee would not be a party opponent to Baker and the statement was not made directly to Walker.[39]

Plaintiff also contends that the then-existing state-of-mind exception applies to Baker's statement to Walker.[40] He argues the statement shows Baker's "confusion" and therefore reflects his then-existing state-of-mind and must be admitted.[41] However, a "statement of memory or belief to prove the fact remembered or believed" is not admissible.[42] Plaintiff does not offer Walker's declaration about Baker's statements to show Baker's confusion. Instead, Plaintiff offers these statements to show someone employed with Defendant actually sent Baker to establish relationships with Plaintiff's customers. Baker's mental state is not at issue.

Accordingly, Plaintiff failed to show any hearsay exception applies to paragraph 7 of Walker's declaration. Accordingly, the Court will not use it in considering Defendant's Motion for Summary Judgment.

### B.   ADA Claim

Defendant asserts that Plaintiff cannot establish that he is a disabled person under the ADA. It relies on Plaintiff's deposition testimony and his return-to-work note, both of which indicate that he could perform his job without restrictions.[43] Additionally, Defendant claims that there is no evidence in the record to support it had any knowledge or belief of a disability when Plaintiff was terminated.[44]

---

[39] Fed. R. Evid. 805; *Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1091 (9th Cir. 1990).

[40] Fed. R. Evid. 803(3).

[41] *Id.*

[42] *Id.*

[43] Doc. No. 31-1, p. 5.

[44] *Id.* at 6.

The ADA makes it unlawful for a covered employer to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[45]

To state a prima facie case for discrimination under the ADA, a plaintiff must demonstrate that: "(1) he is a disabled person within the meaning of the statute; (2) he is qualified, with or without reasonable accommodation, to perform the essential functions of the job he holds or seeks; and, (3) that he suffered an adverse employment action because of his disability."[46]

The ADA definition of "disabled" requires a plaintiff to demonstrate that either (1) he has a physical or mental impairment substantially limiting at least one major life activity; (2) there is a record of his impairment; or (3) he is "regarded as" having a physical or mental impairment.[47] Major life activities include both performing manual tasks and working.[48] "Regarding" a plaintiff as disabled "means that the individual has been subjected to an action prohibited by the ADA . . . because of an actual or perceived impairment."[49] This occurs "whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity."[50] "Establishing that an individual is 'regarded as having such an impairment' does not, by itself,

---

[45]42 U.S.C. § 12112(a).

[46]*Braunling v. Countrywide Home Loans Inc.*, 220 F.3d 1154, 1156 (9th Cir. 2000); *Harris v. Treasure Canyon Calcuim Co.*, 132 F. Supp. 3d 1228, 1236 (D. Idaho 2015).

[47]42 U.S.C. § 12102; 29 C.F.R. § 1630.2(g)(1).

[48]42 U.S.C. § 12102(2)(A).

[49]29 C.F.R. § 1630.2(g)(1)(iii).

[50]*Id.*

9

establish liability."[51] Liability occurs only if the employer discriminated against the plaintiff by subjecting him to a prohibited action because of a perceived disability.[52]

Plaintiff contends that his work injury "affected his ability to stand, sit, sleep, lift, lift his leg, and run."[53] He also states the injury made "it difficult to get in his work vehicle and deliver product to customers."[54] However, Plaintiff has provided no evidence that he was in fact disabled beyond his own statements. In fact, Plaintiff's treating physician allowed him to work without restrictions less than three months following his injury, after a visit in July 2016, and again in September 2016.[55]

Plaintiff also has failed to produce sufficient evidence that would allow a jury to reasonably conclude his disability was a motivating factor in his termination. He has provided no evidence that Defendant was aware of disability or that the disability itself motivated his termination. Plaintiff contends that Defendant must have perceived his disability because he wore a back brace at work.[56] Yet, Plaintiff admits that neither Jensen nor Eames had any knowledge of his alleged limitations.[57] Additionally, he never requested any accommodation.[58]

---

[51]*Id.*

[52]29 C.F.R. § 1630.2(l)(3).

[53]Doc. Nos. 45-1, p. 8; 31-2, p. 9.

[54]Doc. Nos. 45-1, p. 8.

[55]Doc. Nos. 45-1, p. 6.

[56]*Id.*

[57]Doc. No. 31-2, p. 9.

[58]*Id.*

Plaintiff testified Jensen and Eames "didn't even care to ask" and "showed no, you know, interest at all" in the extent of his injuries.[59]

Accordingly, the Court grants Defendant's Motion for Summary Judgment on the ADA claim. Plaintiff failed to establish he was disabled under the ADA and no material fact dispute remains regarding whether Defendant based its termination decision on any actual or perceived disability.

### C.    Age Discrimination Claim

Plaintiff alleges that Defendant violated the ADEA because Jensen fired him based on his age. According to the Plaintiff, Jensen commenced a course of conduct designed to justify the intended termination and disguise the fact that it was age-related.. In particular, Plaintiff alleges Jensen changed the sales goals requirements to show poor performance with the goal of ultimately firing him.

To prevail on a claim for age discrimination, a plaintiff must demonstrate that his age was the "but-for" cause of the employer's adverse action.[60] "Unlike Title VII, ... the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor."[61] However, this rule applies only to a plaintiff's burden at trial, and not at the summary judgment stage.[62] Standards of proof under Title VII of the 1964 Civil Rights Act remain controlling at the summary judgment stage of lawsuits alleging ADEA

---

[59]*Id.*

[60]*Gross v. FBL Fin. Serv.*, 557 U.S. 167, 176 (2009).

[61]*Id.* at 167–68.

[62]*Shelley v. Geren,* 666 F.3d 599, 607–608 (9th Cir.2012).

violations.[63] At summary judgment, ADEA claims use the *McDonnell Douglas* burden-shifting framework.[64] "Under that framework, the burden of production first falls on the plaintiff to make out a prima facie case of discrimination."[65]

To establish a prima facie case of age discrimination, Plaintiff must show that he was: "(1) at least forty years old, (2) performing [his] job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise 'giving rise to an inference of age discrimination.'"[66]

A plaintiff can satisfy the last requirement by presenting "circumstantial, statistical or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination."[67] For example, "[a]n inference of discrimination can be established by showing the employer had a continuing need for the employees' skills and services in that their various duties were still being performed . . . or by showing that others not in their protected class were treated more favorably."[68] The proof to establish a prima facie case of age discrimination "is minimal and does not even need to rise to the level of a preponderance of the evidence."[69]

---

[63]*Id.*

[64]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Ritter v. Hughes Aircraft Co.*, 58 F.3d 454 (9th Cir. 1995).

[65]*Coghlan v. Am. Seafoods Co., LLC*, 413 F.3d 1090, 1094 (9th Cir. 2005).

[66]*Diaz v. Eagle Produce, Ltd.*, 521 F.3d 1201, 1207 (9th Cir.2008) (citation omitted).

[67]*Wallis v. J.R. Simplot, Co.*, 26 F.3d 885, 891 (9th Cir. 1994); see also *Diaz*, 521 F.3d at 1211 ("[W]e treat the last element of the prima facie case with 'flexibility'.").

[68]*Diaz*, 521 F.3d at 1207–08 (internal citations and quotation marks omitted)

[69]*Coghlan*, 413 F.3d at 1094.

If the plaintiff establishes a prima facie case, the burden shifts to the defendant "to articulate a legitimate nondiscriminatory reason for its employment decision."[70] If the defendant does so, the plaintiff then "must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory."[71]

It is undisputed that Plaintiff has satisfied the first and third elements. Defendant, however, argues that Plaintiff has failed to establish the remaining elements because (1) Plaintiff was not performing his job satisfactorily at the time of his termination; and (2) there is no evidence that Jensen would not have terminated Plaintiff but for his age.

According to Defendant, Plaintiff was not performing his job satisfactorily and he was not going to be able to meet his sales goals. This assumption was based on his sales figures as of August 2016. Defendant also points to Plaintiff's low sales performance in all three growing seasons in which he was employed.[72]  However, Plaintiff did exceed the minimum requirement in those years.

Plaintiff relies on Eames's testimony that the Roberts branch had no policy setting out a base amount of sales to be consider a low performer.[73] He also testified that the sales goal at the Roberts branch was $150,000.[74] In fact, a colleague, Mr. Poole, who worked at the Roberts branch for 26 years had a baseline sale incentive of $150,000.[75] Considering that Plaintiff's

---

[70]*Wallis*, 26 F.3d at 889.

[71]*Id.*

[72]Doc. No. 31-2, pp. 3-4.

[73]Doc. No. 45-1, p. 5.

[74]*Id.*

[75]*Id.*

burden in establishing a prima facie case of disparate treatment is "minimal,"[76] the Court finds that, for the purposes of this motion only, Plaintiff has presented sufficient evidence to demonstrate that he had performed his duties satisfactorily before the allegedly discriminatory termination.

The next issue is whether he has shown that he was either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination.[77]

Plaintiff has not presented any evidence that Defendant hired a younger individual to perform his duties. He alleges he was replaced by a younger employee, Chet Baker (age 32), but Baker was transferred from another branch and had been hired ten months before Plaintiff was fired.

Plaintiff also has failed to make a sufficient showing of "circumstances otherwise giving rise to an inference of age discrimination." Defendant provided evidence that a high percentage of its employees within the division managed by Jensen are above 40 years old, the protected age under the ADEA. Specifically, of the 48 sales persons currently under Jensen's management three-fourths are over age 40, half of those are over age 50, and one-fifth of those are over age 60. Additionally, the evidence shows that, under Jensen's management, the percentage of employees over ages 50 and 60 has increased.[78]

---

[76]*See Coghlan*, 413 F.3d at 1094.

[77]*See Diaz*, 521 F.3d at 1207.

[78]Doc. No. 31-2, p. 2.

Plaintiff cites four employees who he contends were younger and treated differently because of their age.[79] He asserts these employees had lower sales numbers, but were allowed to maintain their employment, or were given accounts which increased their chances of achieving the required gross profits.[80] However, Plaintiff has provided no evidence, beyond his own conclusory allegations, to establish that this was age-related. Plaintiff also points to statements made by Jensen to two customers after his termination that indicated he had hired someone "younger." [81]

Considering the totality of the circumstances, Plaintiff has not produced sufficient evidence giving rise to an inference of age discrimination. Accordingly, Plaintiff failed to make a prima facie case under the ADEA.

Even if Plaintiff had met his burden, Defendant provided a legitimate, non-discriminatory reason for discharge. Thus, Plaintiff bears the ultimate burden of persuading the Court that the stated reason for the discharge was false and the true reason for the discharge was unlawful age discrimination. To avoid summary judgment, Plaintiff "must do more than establish a prima facie case and deny the credibility of the [Defendant's] witnesses."[82] He must produce "specific, substantial evidence of pretext."[83]

Plaintiff argues that Jensen's real reason for terminating him was age discrimination. However, Jensen, the person who terminated Plaintiff, is the same person who made the hiring

---

[79]Doc. No. 45-1, pp. 4, 9.

[80]*Id.*

[81]*Id.* at 10.

[82]*Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir.1994) (citation omitted).

[83]*Id.*

15

decision less than three years earlier. Considering the facts of this case, Plaintiff's allegation that Jensen wanted a younger person in the position is not persuasive. If Jensen had preferred to place a younger person in the position, he would have hired one instead of Plaintiff. In fact, the next person hired at the Roberts location was 56 years old and still works for Defendant.[84]

Where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a relatively short period of time, a strong inference arises that there was no discriminatory motive.[85] Plaintiff failed to rebut this inference.

Accordingly, Defendant's motion for summary judgment is granted with respect to the ADEA claim.

### D.    Retaliation Claim

Plaintiff argues that Defendant fired him because he filed a worker's compensation claim, which he contends is a violation of public policy.

In Idaho, "[u]nless an employee is hired pursuant to a contract which specifies the duration of the employment, or limits the reasons why the employee may be discharged, the employee is 'at will.'"[86] Plaintiff does not dispute that he was an at-will employee and that he could have been terminated "at any time [or] for any reason without creating liability."[87]

---

[84]Doc. No. 31-2, p. 11.

[85]See *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270–71 (9th Cir. 1996) (citing *Lowe v. J.B. Hunt Transp., Inc.*, 963 F.2d 173 (8th Cir.1992) (finding argument that company developed aversion to older people less than two years after hiring member of protected age group "simply incredible"); *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 464 (6th Cir.1995) ("An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class."), *cert. denied*, 516 U.S. 1078 (1996)).

[86]*Venable v. Internet Auto Rent & Sales, Inc.*, 156 Idaho 574, 578 (2014) (citations omitted).

[87]*Edmondson v. Shearer Lumber Products*, 139 Idaho 172, 176 (2003).

16

However, even at-will employees may bring a claim of wrongful discharge.[88] Idaho recognizes "a narrow exception to the at-will employment presumption where the employer's motivation for the termination contravenes public policy."[89]

"A termination contravenes public policy 'only where an employee is terminated for engaging in some protected activity, which includes (1) refusing to commit an unlawful act, (2) performing an important public obligation, or (3) exercising certain legal rights and privileges.'"[90] This narrow exception "balance[s] the competing interests of society, the employer, and the employee in light of modern business experience."[91] To succeed under the public policy exception, an employee must show (1) that he was engaged in a legally protected activity; and (2) that there is a causal relationship between his engagement in the protected activity and his termination.[92]

At the summary judgment stage, Idaho courts carefully review the record to determine whether reasonable minds could come to differing conclusions regarding why the adverse action was taken.[93]

It is undisputed that Plaintiff engaged in protected activity for the purpose of bringing a wrongful-termination claim when he filed his worker's compensation claim.[94] Plaintiff must

---

[88] *Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 333 (1977).

[89] *Bollinger v. Fall River Rural Elec. Co-op., Inc.*, 152 Idaho 632, 640 (2012).

[90] *Venable*, 156 Idaho at 579 (citations omitted).

[91] *Crea v. FMC Corp.*, 135 Idaho 175, 178 (2000).

[92] *Bollinger*, 152 Idaho at 640.

[93] See *Ray v. Nampa Sch. Dist. No. 131*, 120 Idaho 117, 121–22 (1991); *Bollinger*, 152 Idaho at 641–42.

[94] See *Jackson*, 98 Idaho at 334 (listing cases illustrating the public-policy exception to the employment-at-will doctrine, including *Frampton v. Cent. Ind. Gas Co.*, 260 Ind. 249, 297

demonstrate there is a causal relationship between the filing the claim and his termination. While the question of causation is generally one for the jury, "it may be decided as a matter of law where there exists no genuine issue of fact."[95] However, Plaintiff must produce more than a scintilla of evidence, such that a rational trier of fact could reasonably find that he was terminated because of his worker's compensation claim.

Plaintiff points to the following evidence to support this claim: (1) the ongoing treatment he was receiving, (2) Jensen's pre-occupation with tracking it, (3) the animosity expressed toward his claim, (4) and the manipulated sales goal after Plaintiff filed his claim.

Plaintiff describes several instances where Eames and Jensen received information concerning his ongoing doctor visits related to his work injury.[96] There is nothing unusual about Eames or Jensen, who are both supervisors, receiving emails about an employees work-related injury.

Plaintiff provided some evidence of animosity to support causation.[97] On the day of the accident, Plaintiff informed Eames, but Eames did not report it, which violated company policy.[98] Plaintiff contends that Eames told other employees in August and September 2016 that

---

N.E.2d 425 (Ind.1973), in which the plaintiff was fired for reporting an injury to her arm so she could file for worker's compensation, which the Indiana court held to be in clear contravention of public policy); see also *Thomas v. Med. Ctr. Physicians, P.A.*, 138 Idaho 200, 208 (2002) ("This Court has also indicated that the public policy exception would be applicable if an employee were discharged, for example for refusing to date her supervisor, for filing a worker's compensation claim, or for serving on jury duty.")

[95]*Bollinger*, 152 Idaho at 640–41.

[96]Doc. No. 45-1, pp. 5, 6, 9.

[97]*Coszalter*, 320 F.3d at 977.

[98]Doc. No. 45-1, p. 3.

"[he] tried to fire that son of a bitch every day."[99] Plaintiff testified that, after the accident, Eames started questioning Plaintiff's billing practices.[100] In September 2016, Plaintiff was told he could no longer use his CDL, which prohibited from using a company vehicle for deliveries. Other employees with the same condition were afforded accommodations.[101] Additionally, it is undisputed that Jensen told Plaintiff shortly after he filed his claim that "he knew better."[102] Plaintiff contends Jensen was referring to the filing of the claim, while Defendant maintains he was referring to the incident itself. This is a material fact in dispute that a jury must resolve.

The change in the yearly sales goal, according to Plaintiff's testimony, occurred after the injury, but before he filed the claim. Defendant asserts that since Jensen told Plaintiff of his increased sales goal before he made the claim, the termination could not logically be connected to the protected activity.

Plaintiff was fired for not meeting this yearly profit goal of $250,000, but the firing occurred before the end of the year. Apparently, the decision was made in August when his sales were at $170,000.[103] Plaintiff ended up with $211,000 profits in October with over two months left in the year.[104] The parties dispute whether he had additional sales set up for the rest of the year. Additionally, several other crop consultants had lower sales and gross profits than Plaintiff over the same time period, but were not fired.[105] Plaintiff contends Jensen violated company

---

[99]*Id.* at 7.

[100]Doc. No. 31-2, p. 8.

[101]Doc. No. 45-1, p. 8.

[102]Doc. No. 31-2, p. 8.

[103]Doc. No. 45-1, p. 7.

[104]*Id.* at 10.

[105]*Id.* at 9.

policy by not providing him with performance reviews or a warning for his low sales.[106] These events occurred after Plaintiff filed his claim.

In retaliation cases, the timing of an employee's termination frequently can contribute to an inference of causation. The relevant adverse action is Plaintiff's termination, not necessarily informing him of an increased gross profit requirement. A long distance between the protected act and the firing decision makes a causal link more difficult to prove. However, "there is no 'bright line' rule providing that any particular period is always too long or always short enough to support an inference" of causation."[107]

Plaintiff filed his worker's compensation claim on May 7, 2016 and was terminated five months later. However, Jensen emailed the Human Resources Department on August 29, 2016, and discussed firing Plaintiff, which suggests the decision to fire Plaintiff had already been made.[108] This moves the proximity of the firing decision closer to the claim-filing date (three months) and increases the inference of causation. Three months is within a range that can properly support an inference of causation.[109] Moreover, Plaintiff provided circumstantial evidence of a pattern of antagonism and differential treatment following the protected conduct.[110]

A genuine fact dispute exists, and Plaintiff has produced sufficient evidence for a juror to

---

[106]*Id.*

[107]*Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003) (holding that "[d]epending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation."); *Allen v. Iranon*, 283 F.3d 1070, 1078 (9th Cir. 2002) ("an eleven-month gap in time is within the range that has been found to support an inference that an employment decision was retaliatory").

[108]Doc. No. 45-1, p. 7.

[109]See *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003); *Allen v. Iranon*, 283 F.3d 1070, 1078 (9th Cir. 2002).

[110]*Porter v. California Dep't of Corr.*, 419 F.3d 885, 895 (9th Cir. 2005).

reasonably find that he was terminated because of his worker's compensation claim.

Accordingly, the Motion for Summary Judgment is denied on Plaintiff's retaliation claim.

### E.    Jurisdiction of State Law Claim

When a federal court has dismissed all claims over which it has original jurisdiction, it may, at its discretion, decline to exercise supplemental jurisdiction over the remaining state law claims.[111] "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims."[112]

Plaintiff brought this action on the basis of federal question jurisdiction. Having granted summary judgment on Plaintiff's federal claims, and after considering the applicable factors, the Court declines to exercise supplemental jurisdiction over the state-law retaliation claim. Therefore, Plaintiff's retaliation is dismissed without prejudice.

### CONCLUSION

For the reasons stated above, Defendant's Motion to Strike (Doc. No. 47 ) is GRANTED and Defendant's Motion for Summary Judgment (Doc. No. 31) is GRANTED in part and

---

[111]28 U.S.C. § 1367(c)(3); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 640 (2009).

[112]*Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988). See also *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring them for a surer-footed reading of applicable law. Certainly, if the federal law claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Jones v. Cmty. Redevelopment Agency of City of L.A.*, 733 F.2d 646, 651 (9th Cir. 1984) ("When federal law claims are dismissed before trial ... pendant [sic] state claims should also be dismissed."); *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) (district court not required to provide explanation when declining jurisdiction under § 1367(c)(3)).

DENIED in part. Plaintiff's ADA and ADEA claims are hereby dismissed with prejudice.

Plaintiff's retaliation claim is dismissed without prejudice.

IT IS SO ORDERED this 2nd day of February, 2021.

UNITED STATES DISTRICT JUDGE